RICHARDI v. VILLAGE OF BELLAIRE.

1. MUNICIPAL CORPORATIONS — PUBLIC IMPROVEMENTS — WATER-WORKS—NECESSITY FOR ESTIMATES.

   Where the common council of a village, organized under the general law, obtained from engineers estimates of the expense of installing and maintaining a waterworks system and improving the electric lighting plant belonging to the village, and, without official action upon the acceptance or adoption of the estimate, adopted a resolution calling a special election and submitting to the electors the question of borrowing a sum of money substantially less than the estimate furnished by the engineers, there was not a substantial compliance with section 2893, 1 Comp. Laws, and the action of the council and the election which followed were void.

2. SAME—BORROWING MONEY—POPULAR VOTE—WATERWORKS—MAINTENANCE.

   A submission to the electors of a village, organized under the general law, of a proposition to borrow a certain sum of money for the "construction and maintenance of waterworks," there being nothing to show what proportion was to be used for construction and how much for maintenance, was void, since the statute (sections 2890–2900, 1 Comp. Laws) does not authorize the borrowing of money for the maintenance of waterworks.

Appeal from Emmet; Shepherd, J. Submitted January 8, 1908. (Docket No. 13.) Decided July 3, 1908.

Bill by Henry Richardi against the village of Bellaire, its president, clerk, and common council, to enjoin the borrowing of money for the establishment of a waterworks system. From a decree dismissing the bill, complainant appeals. Reversed, and decree entered for complainant.

*Fitch R. Williams,* for complainant.

*Leavitt & Guile,* for defendants.

McAlvay, J. The village of Bellaire is incorporated under the general laws of the State. For the year A. D. 1905, its assessed valuation was $316,845; for the year A. D. 1906, $286,725. The complainant is a large taxpayer of said village. This action is brought to restrain the defendants from borrowing money alleged to be voted by the people at a special election held June 18, 1906. It is claimed that the proper proceedings were not had to authorize the proposed action. The defendants answered the bill of complaint and claimed that the action of the village authorities was regular, and that the bill of complaint ought to be dismissed. A hearing was had in open court. The circuit judge filed a written opinion, as follows:

"The bill filed in this cause seeks to enjoin the defendants from raising money by bonds to install waterworks, and to improve an electric light plant owned by the city. Complainant bases his claim for relief on several grounds; the following, only, being insisted upon in the argument:

"*First.* That there is no record of any estimate of the contemplated cost of the improvements.

"*Second.* That the instrument prepared by the engineers employed by the village council, and claimed to be an estimate, does not fill the requirement, because it places the estimate of the expense at a sum materially larger than the village is authorized by its charter to borrow.

"*Third.* That the amount sought to be raised is more than 5 per cent. (the statutory limit) of the last preceding tax roll.

"1. I find that the alleged estimate was procured by action of the council of defendant, was in writing and on file in the village clerk's office at the time of the adoption of the resolution submitting to the electors the question of making the loan in question, which is a sufficient record of the fact of the existence of the estimate.

"2. The fact that the estimated cost of the improvements was more than the village was authorized to borrow may or may not have been a good reason for not adopting the resolution to bond, but did not divest the council of the power to borrow an amount less than the estimate.

"3. The amount sought to be raised was not in excess of 5 per cent. of the 1905 tax roll. The assessment for 1906 was materially less; but the roll for that year (1906) did not become a 'tax roll' until June 18th, the day of the election, and after the closing of the polls.

"In my opinion the roll of 1905, being the 'last preceding' one at the time of the action of the council, is the one which limits the power to bond. Therefore a decree may be made dismissing the bill, with costs."

The case is brought here by appeal; the complainant making the same claims here that he did in the court below.

The record shows that for a number of years the village owned and operated a municipal electric lighting plant, and a dam and water power, and was operating the same when this action was brought. It also shows that at the time of the commencement of this action, and for a number of years prior thereto, the village of Bellaire derived its water supply for fire protection and domestic use from a plant owned and operated by the Bellaire Water Supply Company, a corporation of which the complainant is the manager and principal owner; that the contract between the village and the last-named company was about to expire. On April 10, 1906, the common council of the village of Bellaire took action looking to the raising of the dam and increasing the efficiency of the electric lighting plant owned by said village, and at the same time took action looking to the construction and maintenance of a waterworks system for said village, by appointing a committee consisting of three of its members, together with

the president of the village, "to ascertain and estimate the cost of raising the dam at the electric lighting plant of the village to increase the efficiency of said electric lighting plant and to increase the power at said plant to its full capacity."

It was further provided by the resolution appointing said committee "that said committee further estimate the expense and so far as practicable determine the cost of constructing and maintaining a suitable waterworks system for the village," and "that such committee take the preliminary steps to secure the services of a competent engineer to make all necessary surveys, plans, and specifications for such increase of power, and for the installation of a waterworks system." The committee conferred with the Riggs & Sherman Company, consulting engineers, of Toledo, Ohio, and on the 19th of April, 1906, a representative of that firm came to Bellaire, and with the committee looked over the ground and made certain measurements at the dam and water power. On April 23, 1906, the committee, by report of that date of record in the council proceedings, referred to the common council of said village an offer in writing made by said Riggs & Sherman Company to make surveys, plans, specifications, and estimates of cost of both such improvements at the dam and water power, and for a waterworks system for said village, for a certain consideration therein specified. Which written offer was accepted by the common council of said village by resolution of record in the council proceedings.

The Riggs & Sherman Company was notified of the acceptance by the common council of its said offer, and the sketch map, therein referred to, was sent by the clerk of the common council. On May 19, 1906, the said Riggs & Sherman Company sent and furnished the common council of said village itemized estimates of the expense of such proposed waterworks system, amounting in the aggregate to $23,940.55, and of the proposed improvements at the dam and water power, amounting to $5,700.

Accompanying said estimates was a letter from the Riggs & Sherman Company showing wherein said estimates for a waterworks system could be modified and the expense thereby materially lessened. By the use of a water tower instead of a reservoir it was shown a saving of $1,200 or $1,300 would be effected; and by the use of different pipe it was shown a saving of $2,000 could be made. Said estimates and letters went into the official custody of said village clerk and remained a file in his office. The estimates were laid before the common council of said village and discussed prior to the adoption of the resolution calling for a special election to vote upon the proposition hereinafter mentioned.

On May 23, 1906, the common council of said village, by resolution of record in the council proceedings, submitted to vote of the electors of said village two distinct and separate propositions, as follows:

"Resolved, That a special election in and for the village of Bellaire is hereby ordered to be held at the common council room in said village on Monday, the 18th day of June, A. D. 1906, for the purpose of voting upon the following distinct and separate propositions, to wit:

"Proposition Number 1: To borrow the sum of $15,800 for the construction and maintenance of waterworks in said village of Bellaire.

"Proposition Number 2: To raise by loan the sum of $6,200 for necessary corporate purposes, to wit, for the purpose of raising and repairing the dam and enlarging the power house of the electric lighting plant now owned and operated by the village of Bellaire.

"The contents of the ballots on proposition number 1, to read: In favor of borrowing the sum of $15,800 for constructing and maintaining waterworks for the village of Bellaire.

"Yes (        )
"No   (        )

"The contents of the ballots on proposition number 2, to read: In favor of raising by loan the sum of $6,200 for raising and repairing the dam and enlarging the power house of the electric lighting plant of the village of Bellaire.

"Yes (        )
"No   (        )"

The necessary notices were given, a special election was held and both propositions were carried by more than a two-thirds vote. The above is all that appears of record as to the estimates and the action taken in relation thereto. Was what was done a substantial compliance with the provisions of the statute? See 1 Comp. Laws, §§ 2890 to 2900.

The requirement of the statute that the village, before borrowing, appropriating, or spending money for the purpose of construction of water works, shall, by its council, cause to be made an estimate of the expense thereof, has not been complied with. The approximate estimate furnished by the engineers was tentative, and was for no fixed amount. It was accompanied by written instructions and suggestions whereby it could be reduced in amount, as the following statement clearly shows:

" It occurs to us that with the suggestions in this letter the council can use the estimate of figures in a way that will enable you to submit a proposition within the bonding limit."

No official action upon the acceptance or adoption of the estimate was ever had. This we consider necessary, for the reason that without such action, there is no official declaration of the amount required.

From this so-called estimate, no one can tell what amount the council has determined was required for such waterworks. In fact, the council has never determined the amount required to construct these waterworks, either by adopting an estimate, or by independent resolution. There is no indication in proposition number 1, submitted to the electors, as to what proportion was for construction, and how much was to be used for maintenance. The statute does not authorize money to be borrowed for maintenance of waterworks.

The section of the statute under consideration, i. e., section 2893, 1 Comp. Laws, reads in part as follows:

" Before any money shall be borrowed, appropriated,

raised or expended for the purchase or construction of waterworks in any village, the council shall cause to be made an estimate of the expense thereof, and the question of raising the amount required for such purpose shall be submitted to the electors of the village, at its annual election, or at a special election called for that purpose by the council, as provided for in this act, and shall be determined as two-thirds of the electors voting at such election by ballot shall decide."

Under this section, the voter would have a right to rely upon the fact that $15,800 was the amount required. Nowhere in this record appears an answer to the important question, What was the amount required? Fifteen thousand eight hundred dollars was not that amount, nor is it claimed that $23,940.55, as the required amount, has ever been submitted to the people.

It is not necessary to discuss the other questions raised. The action of the council was void, as were also the election proceedings which followed. The decree should be reversed and a decree entered in favor of complainant, as prayed, with costs of both courts.

BLAIR, OSTRANDER, HOOKER, and MOORE, JJ., concurred.